**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Jason Rawls and Wayne Mayers, *on behalf of themselves and all those similarly situated individuals*,<br><br>Plaintiffs,<br><br>v.<br><br>Premier Events, LLC,<br><br>Defendant. | CIVIL ACTION NO.: |

## COMPLAINT

## INTRODUCTION

1. This is an action under the Fair Labor Standards Act ("FLSA") to recover unpaid wages from Defendant Premier Events, LLC on behalf of Plaintiffs Jason Rawls, Wayne Mayers, and all similarly situated employees.

2. Premier Events bills itself as one of the largest events management companies in Atlanta. It also does not pay an overtime premium to any of its employees, purportedly because it is a seasonal business that provides "amusement or recreational" services.

3. In reality, Premier Events knows full well that its refusal to pay overtime is unlawful. In an effort to obscure its complete failure to pay overtime to employees, Premier Events utilizes related "affiliate" companies, including Phoenix

Concessions, LLC, Phoenix Concessions, LLC, Collegiate Concessions, LLC, City Park Concessions, LLC, PTC Concessions, LLC, and Chastain Concessions, LLC (collectively, "Affiliate Companies"), to switch employees over to a different putative employer when they work in excess of 40 hours in one workweek.

4. The bait-and-switch has no logical justification. Premier Events employees do not complete separate W-4s for other "affiliated" companies, and their putative paycheck provider does not change depending on the event they are working. Moreover, Premier Events and its Affiliate Companies have applied this blanket prohibition on paying overtime to *all* hourly employees.

5. In addition to failing to pay any overtime premium, Premier Events also engaged in improper tip pooling for events by improperly including management and supervisory personnel within the tip pool.

6. Accordingly, Plaintiffs seek certification of a collective action and the recovery of all unpaid wages, liquidated damages, prejudgment interest, and their attorneys' fees and costs.

## PERSONAL JURISDICTION

7. This Court has general personal jurisdiction over Premier Events because it is organized in Georgia and, upon information and belief, one or more members of Premier Events is a citizen of Georgia.

8. This Court also has specific personal jurisdiction over Premier Events because the acts and omissions alleged in this Complaint occurred in the State of Georgia.

## **SUBJECT MATTER JURISDICTION AND VENUE**

9. Plaintiffs' claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

10. This Court is a proper venue for Plaintiffs' claims under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division.

## **THE PARTIES**

11. Premier Events is a Georgia limited liability company and may be served through its registered agent, Michael Sard, at 3789 Roswell Road, Atlanta, Georgia, 30342.

12. Wayne Mayers is a citizen of Georgia.

13. Jason Rawls is a citizen of Georgia.

## **FLSA Jurisdiction**

14. Throughout the events described in this complaint, Premier Events has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earned gross annual sales in excess of $500,000.

15. Throughout the events described in this complaint, Premier Events has been and continue to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

16. Throughout the events described in this complaint, Plaintiffs and Premier Event employees regularly handled and used supplies and materials that were moved in or produced for interstate commerce. Therefore, Premier Events engaged in interstate commerce within the meaning of the FSLA.

## FACTUAL ALLEGATIONS

### A. Premier Events' Business

17. Premier Events is a large events management company headquartered in Atlanta, Georgia. The company represents that it provides support for over 350 events in Atlanta each year, such as the Piedmont Arts Festival, Music Midtown, and the Atlanta Dogwood Festival.

18. In addition to providing event support services for ad hoc events, Premier Events and its Affiliate Companies also have long-term services agreements to provide concession services at major Atlanta venues, such as Atlanta Symphony Hall and the High Museum.

19. Premier Events began as a concessions provider at events, where its employees provided food and beverages for event attendees.

20. Over time, Premier Events began offering a much broader array of services. The company now boasts on its website that it "offers a comprehensive suite of services, including event management, concessions, logistics, marketing, sponsorship, and more, ensuring a full-service approach to meet every client's event needs." Premier Events – About Us, *available at*: https://premiereventslive.com/about-us/ (last accessed October 19, 2025). Thus, Premier Events has, in its own words, evolved past a concessions provider into "a full-service event consulting powerhouse, tailoring our diverse array of services to meet the unique needs of each client."

21. Premier Events separates the services it provides into six categories: (1) event management; (2) event logistics; (3) concessions; (4) marketing; (5) sponsorships; and (6) entertainment.

22. These services extend well beyond providing concessions at events and include transporting equipment and supplies, event planning and marketing, and coordinating events and potential sponsors.

23. Premier Events' job application lists several different "divisions" of the company: (1) Corporate Office (administrative); (2) Warehouse; (3) Festival and Event Management; and (4) Festival Concessions Division.

24. Upon information and belief, Premier Events maintains a warehouse located at 4200 Highlands Parkway, Smyrna, Georgia.

25. Warehouse employees are responsible for maintaining warehouse supplies, pulling consumable goods and logistical equipment for events, and transporting materials from the warehouse to events.

26. Event and concessions employees work in or around events for Premier Events, and their exact responsibilities with the scope of Premier Events' involvement. Event employees often assist with setting up tents and other event-related structures, managing event entry, and staffing concessions locations at events.

27. Upon information and belief, the vast majority of Premier Services' employees have the job title of "barback." Despite the name, barbacks' duties may include gathering event supplies from warehouses, organizing the warehouse, delivering supplies to events, setting up events and event structures, managing ingress, egress, and parking to and from events, staffing beverage and food concessions at events, and the breakdown/cleanup following events.

28. Barbacks are paid on an hourly basis. If a barback works more than 40 hours per week, that employee receives their regular rate of pay for hours worked in excess of 40 in a workweek rather than one-and-a-half times their regular rate.

29. Barbacks are supervised by "Project Managers." Upon information and belief, Premier Events employs between three to seven Project Managers at any given time.

30. Project Managers are likewise paid on an hourly basis and largely perform the same duties as barbacks. In addition to those duties, however, Project Managers also spend time before and after the event supervising the work performed by barbacks.

**B. Affiliate Concession Companies**

31. Premier Events has several companies that it identifies as "affiliate companies": (1) Collegiate Concessions; (2) Phoenix Concessions; (3) City Park Concessions; (4) PTC Concessions; and (5) Chastain Concessions.

32. Upon information and belief, the Affiliate Companies are controlled by the same principals involved in Premier Events.

33. Upon information and belief, Premier Events uses the Affiliate Companies to avoid overtime liability.

**C. Mayers' Employment with Premier Events**

34. Plaintiff Wayne Mayers joined Premier Events as a barback in or around October 2024.

35. Premier Events paid Mayers $14.00 per hour and did not pay him overtime at any point during his employment.

36. Mayers' job duties varied based on whether he was assigned to work at the warehouse or at an event. If Mayers worked at the warehouse, Mayers would assist with event preparation by pulling supplies from the warehouse for events. If

Mayers was working at an event, he worked as a bartender and provided beverages at concessions locations operated by Premier Events.

37. During Mayers' employment with Premier Events, he regularly worked more than 40 hours in a workweek. In some weeks, Mayers reported more than 90 hours of compensable time.

38. During many of those weeks, Mayers would receive two purported paychecks from two different companies. One of the paychecks would be from Premier Events, and another one would be for an Affiliate Company.

39. For example, Premier Events failed to pay Mayers one week. After Mayers raised this issue with Premier Events, he received a check from Phoenix Concessions, an Affiliate Company, with a note that the payment was for "missed pay." A true and correct picture of this check is included below:




40. Later in 2025, Mayers received a pay stub from Phoenix Concessions for July 12, 2025 to July 25, 2025. This pay statement lists Mayers as an "employee"

of Phoenix Concessions and reports that Mayers' year-to-date gratuity and pay from Phoenix Concessions totaled $495.91, which is less than the April 30, 2025 check that Mayers received from Phoenix Concessions. A true and correct picture of this paystub is included below:



Phoenix Concessions, LLC

Employee
Wayne Mayers

| Earnings and Hours | Hours | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Gratuity | | | 49.22 | 49.22 |
| Hour Rate | | | 0.00 | 446.69 |
| | | | 49.22 | 495.91 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Medicare Employee Addl Tax | 0.00 | |
| Federal Withholding | 0.00 | |
| Social Security Employee | 0.00 | |
| Medicare Employee | 0.00 | |
| | 0.00 | |
| Net Pay | 49.22 | 495.91 |

41. This pay statement does not list any withholdings for taxes by Phoenix Concessions for these purported wages.

42. Moreover, Premier Events never paid Mayers an overtime premium at any time during his employment. Instead, if Mayers worked more than 40 hours in a workweek, Mayers would receive only his normal hourly rate rather than 1.5 times his regular rate.

43. During Mayers' employment with Premier Events, Premier Events regularly set up a tip pool for each event for the staff that worked that event. Those tip pools regularly included employees that were ineligible to participate in a tip pool, including supervisors and managers.

**D. Rawls' Employment With Premier Events**

44. Jason Rawls worked for Premier Events as a barback from approximately 2005 to 2011. Rawls rejoined Premier Events as a Project Manager in 2023.

45. Rawls did not submit an application or complete any employment paperwork, such as a withholdings form, for any Affiliate Company.

46. Rawls' employment duties largely mirrored what he did as a barback. His day-to-day activities involved gathering event supplies from warehouses, organizing the warehouse, delivering supplies to events, setting up events and event structures, managing ingress, egress, and parking to and from events, staffing beverage and food concessions at events, and the breakdown/cleanup following events. Rawls also managed or supervised barbacks who were assisting in event set-up or breakdown.

47. Rawls was not paid any overtime premium at any point during his time working for Premier Events as a Project Manager.

48. When Rawls worked more than 40 hours in a workweek, he, like Mayers, would regularly receive a check from Premier Events and another check from an Affiliate Company. Over the course of his time as a Project Manager, Rawls received a check purportedly for wages from every Affiliate Company.

49. In some weeks, Rawls received three checks from Premier Events and Affiliate Companies. For example, for one pay period, Rawls recorded 68.3 hours worked and his time was divided between Phoenix Concessions, Chastain Concessions, and Collegiate Concessions.

50. The payment from Affiliated Companies would normally be provided to Rawls as a paper, handwritten check.

51. As a Project Manager, Rawls also participated in Premier Event tip pools along with other management personnel, including Kevin Sigler, the Operations Director, and Patrick Wade, the Staffing Manager.

52. Upon information and belief, to date, Premier Events and its Affiliate Companies have continued their practice of paying non-exempt, hourly workers at their regular rate, even for hours worked in excess of 40 hours in a workweek.

53. Upon information and belief, Premier Events and its Affiliate Companies continue to unlawfully include supervisors and management personnel in tip pools.

### E. Premier Events' Violations Are Willful

54. Premier Events' violations of the FLSA are willful. Barring an applicable exemption from overtime, an employer covered by the FLSA must pay overtime at one-and-a-half times the employee's regular rate.

55. In an opinion letter issued on January 15, 2021, the Department of Labor Wage-Hour Division ("WHD") reasoned that an "employer that produces up to 2,400 events in a normal year for individuals, companies, non-profits, schools, universities, and a variety of public entities" was not exempt from the FLSA's overtime requirements.

56. The WHD determined that such an employer did not qualify as exempt under the recreational or amusement exemption of the FLSA because its limited involvement in producing temporary events at various locations "did not convert it into a multi-site employer" or provide the requisite "establishment" needed to support the exemption.

57. Additionally, it is well established that managers and supervisors cannot be included in tip pools.

**F. 216(b) Collective Action Allegations**

47. Rawls and Mayers are similarly situated to other hourly employees employed by Premier Events, who were improperly denied overtime compensation because of Premier Events' unlawful practice of refusing to pay an overtime rate to hourly employees.

48. Plaintiffs seek to certify the following collective action ("Overtime Rate Collective"):

> All current and former non-exempt employees who worked for Premier Events in the last three years preceding this lawsuit through the entry of judgment who were not paid one-and-a-half their regular rate of pay for hours worked over forty in a work week.

49. Plaintiffs and the proposed Overtime Rate Collective members were subjected to the same failure to be paid one-and-a-half times their regular rate for overtime wages for hours worked over 40 in a workweek in violation of the FLSA, 29 U.S.C. § 207, because Premium Events has a policy to not pay hourly employees an overtime premium for hours worked in excess of 40 hours per workweek.

50. The claims under the FLSA may be pursued by similarly situated persons who opt-in to this case pursuant to 29 U.S.C. § 216(b).

51. There is interest in the collective treatment of these claims. Multiple similarly situated employees, all of whom worked for Premier Events as non-exempt employees within the last three years, have indicated their interest in joining the collective action, and multiple consent forms will be contemporaneously filed with this Complaint.

52. Mayers is also similarly situated to other hourly employees employed by Premier Events who were subjected to an unlawful tip pool by the inclusion of supervisory personnel in tip pools.

53. Mayers also seek to certify the following collective action ("Tip Pool Collective"):

> All current and former non-exempt barbacks who worked for Premier Events in the last three years preceding this lawsuit through the entry of judgment who participated a tip pool that included a distribution to managerial or supervisory personnel.

54. Mayers and the proposed Tip Pool Collective members were subjected to the same unlawful distributions to managerial personnel from tip pools, in violation of the FLSA, 29 U.S.C. § 203(m)(2)(B).

55. The claims under the FLSA may be pursued by similarly situated persons who opt-in to this case pursuant to 29 U.S.C. § 216(b).

56. There is interest in the collective treatment of these claims. Multiple similarly situated employees, all of whom worked for Premier Events as non-exempt employees within the last three years have indicated their interest in joining the collective action, and multiple consent forms will be contemporaneously filed with this Complaint.

57. Upon information and belief, the number of employees in the putative Overtime Collective is more than 100.

58. Upon information and belief, the number of employees in the putative Tip Pool Collective is more than 100.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (Overtime)
## Collective Action Against Premier Events

58. Plaintiffs incorporate the allegations in Paragraph Nos. 1-xx as if fully restated here.

59. Plaintiffs are statutory employees within the meaning of the FLSA.

60. Premier Events is a statutory employer within the meaning of the FLSA.

61. Premier Events violated the FLSA by failing to pay overtime to Plaintiffs and all similarly situated hourly workers for hours worked in excess of 40 hours in a week, which must be paid at one-and-a-half their regular rate of pay.

62. Plaintiffs seek to certify the following Overtime Rate Collective:

> All current and former non-exempt employees who worked for Premier Events in the last three years preceding this lawsuit through the entry of judgment who were not paid one-and-a-half their regular rate of pay for hours worked over forty in a work week.

63. Plaintiffs and the proposed Overtime Rate Collective members were subjected to the same failure to be paid overtime wages for hours worked over forty in a workweek in violation of the FLSA, 29 U.S.C. § 207.

64. The claims under the FLSA may be pursued by similarly situated persons who opt-in to this case pursuant to 29 U.S.C. § 216(b).

65. There is interest in the collective treatment of these claims.

66. Premier Events intentionally and/or knowingly refused to pay overtime to Plaintiffs and similarly situated employees even though Plaintiffs and the

Overtime Rate Collective worked in excess of 40 hours in a workweek, as evidenced by Premier Events' pay records.

67. Plaintiffs and the Overtime Rate Collective are entitled to one-half times their regular rates for every such hour they worked over forty in a work week, liquidated damages, pre-judgment interest, and their reasonable attorneys' fees and costs.

**COUNT II**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**
**(Improper Tip Pool)**
**Collective Action Against Premier Events**

68. Plaintiffs incorporate the allegations in Paragraph Nos. 1-xx as if fully restated here.

69. Mayers is a statutory employee within the meaning of the FLSA.

70. Premier Events is a statutory employer within the meaning of the FLSA.

71. Premier Events violated the FLSA by maintaining an unlawful tip pool.

72. Under the FLSA, "[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

73. Managers and supervisors include any employee (1) whose primary duty is managing the enterprise or a customarily recognized department or

subdivision of the enterprise; (2) who customarily and regularly directs the work of at least two or more other full-time employees or their equivalent; and (3) who has the authority to hire or fire other employees, or whose suggestions and recommendations as to the hiring or firing are given particular weight.

74. Premier Events improperly included managers and supervisors in tip pools, including Project Managers and salaried managerial personnel.

75. Mayers seeks to certify the following Tip Pool Collective:

> All current and former barbacks employed by Premier Events, excluding Project Managers, who were employed at any point on or after three years before the date of conditional certification and who participated in a tip pool that included a supervisor or manager.

76. Mayers and the proposed Tip Pool Collective members were subjected to the same improper inclusion of managerial personnel in tip pools, in violation of the FLSA.

77. The claims under the FLSA may be pursued by similarly situated persons who opt-in to this case pursuant to 29 U.S.C. § 216(b).

78. There is interest in the collective treatment of these claims.

79. As a result of Premier Events' willful violation of FLSA, Mayers and the Tip Pool Collective are entitled to recover, under the FLSA, all tips kept by the employer, any tip credit claimed by Premier Events, an equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**WHEREFORE,** Plaintiffs request that the Court enter the following relief:

a. Certification of the Overtime Collective and the Tip Pool Collective;

b. An accounting of all wages purportedly paid to Plaintiffs and the collective action members by any Affiliate Company;

c. Declare that Premier Events violated Plaintiffs' rights under the federal statutes listed above;

d. Award Plaintiffs all unpaid wages, including any tips unlawfully retained by Premier Events;

e. Award Plaintiffs liquidated damages;

f. Award Plaintiffs prejudgment interest as required by law;

g. Award Plaintiffs their reasonable attorneys' fees and expenses; and

h. Grant such additional relief as may be just.

Respectfully submitted, this 27th day of October, 2025.

*s/ Alex Meier*
Jackie Lee
Georgia Bar No. 419196
Alex Meier
Georgia Bar No. 282350
LEE MEIER
695 Pylant Street NE, Suite 105
Atlanta, Georgia 30306
Telephone: (404) 999-4798
jlee@leemeier.law
ameier@leemeier.law

**COUNSEL FOR PLAINTIFFS**